

# IN THE COURT OF CRIMINAL APPEALS
# OF TEXAS

### NO. PD-1133-14

**CODY WAYNE McKAY, Appellant**

**v.**

**THE STATE OF TEXAS**

**ON APPELLANT'S PETITION FOR DISCRETIONARY REVIEW
FROM THE SIXTH COURT OF APPEALS
HUNT COUNTY**

HERVEY, J., filed a dissenting opinion in which KELLER, P.J., KEASLER, J., and RICHARDSON, J., joined.

## DISSENTING OPINION

I respectfully dissent. To begin with, I would agree with the conclusion of the majority that "[w]ithout any showing that T. J. was often underfoot of Appellant or that Appellant knew T. J. would likely be under his feet, the evidence is insufficient to support Appellant's conviction of negligently causing injury to a child," if in fact there was no such evidence. *McKay v. State*, No. PD-1133-14, slip. op. at 9 (Tex. Crim. App. Oct. 26, 2015). However, based on my reading of the record, coupled with those portions relied

upon by the majority here and the dissenting opinion of the court of appeals, I would find that the evidence was sufficient to support Appellant's conviction, especially because we "look at the evidence presented in the light most favorable to the verdict and determine whether 'any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.'" *McKay*, slip op. at 5 (citing *Jackson v. Virginia*, 443 U.S. 307, 318–19 (1979)).

## FACTS

I note the following facts from the record,[1]

- Appellant and Casteel had been dating for about five months at the time of the incident. During the first two months of their romantic relationship, Appellant and Casteel would spend the night together at their parents' homes with her children, and during the three months leading up the incident, Appellant, Casteel, and her two children, including two-year-old daughter T.J., who was burned, lived in an apartment together.

- **Appellant normally cooked meals for the children. Casteel said he regularly cooked for the family because he was the better cook, and she often worked late.**

- **She also said that, when she was home, she had personally observed Appellant cooking and preparing meals for the family, and that she had seen T.J. running around in the kitchen while he cooked.**

- **When Appellant cooked in the kitchen there was not much space for him to move around because he was bigger,** and the apartment kitchen was a "narrow galley kitchen."

---

[1]Admittedly, most of these facts appear in the majority opinion. However, I have highlighted additional relevant facts that I gleaned from my review of the record.

- The evening in question, Appellant was cooking dinner for himself and the kids, and Casteel was working. While Appellant was cooking, T.J. was playing in the apartment.

- After Appellant finished heating up green beans on the stove, he turned around with the hot pot to put it on the counter, but he tripped over T.J., who was behind him, and spilled the scalding water and hot green beans on her.

- As a result, T.J. sustained multiple second-degree burns, including **four separate burns to her scalp, her entire back, and her left thigh.** Appellant was charged with injury to a child causing serious bodily injury. The State later reduced the charge to injury to a child causing bodily injury.

- At trial, a report over 1,000 pages long from the Texas Department of Family and Protective Services (DFPS) regarding the incident and Casteel's care of T.J. was admitted into evidence. In that report, Casteel said that T.J. was "always 'up her butt.'"

- During deliberations, the jury sent a note asking for all of the evidence in the case and then spent an additional three hours deliberating before reaching a verdict.

- The jury convicted Appellant of injury to a child causing bodily injury. Based on its verdict, the jury believed that Appellant was criminally negligent when he moved a pot of boiling water and green beans around the kitchen, although he knew T.J. was playing in the apartment and was known to run around in the small kitchen while he was cooking.

## COURT OF APPEALS

On appeal, Appellant argued that there was insufficient evidence to sustain his conviction, but the court of appeals affirmed the judgment of the trial court. *McKay v. State*, No. 06-14-00003-CR, 2014 WL 3887777, at *3 (Tex. App.—Texarkana Aug. 8 2014, pet. granted) (mem. op.) (not designated for publication). It reasoned that, based on

Casteel's statement to a DFPS worker that T.J. was "always 'up her butt,'" a rational jury could have reasonably inferred that T.J. "was 'always' getting close at hand or under foot"; therefore, Appellant should have known that she could be underfoot while he was cooking. *Id.* Writing in dissent, Justice Moseley argued that the statement in question was only one sentence in a lengthy DFPS report; that because of the special relationship between children and their parents, the majority erred when it assumed that a child would behave the same around his mother as he would around other people; and that there was no evidence that T.J. was known to be under Appellant's feet. *Id.* at 4 (Moseley, J., dissenting).

## THE MAJORITY OPINION

Turning to its own analysis, the majority states that:[2]

> [T]he only piece of evidence that the court of appeals found that could support this conviction was the statement from Casteel in the DFPS report. While the court of appeals held this statement to be sufficient to uphold Appellant's conviction, we do not.
>     We do not see how Casteel's statement that T. J. was always "up her butt"–meaning that T. J. was often under her feet–is relevant. As Justice Moseley discussed, there is a special relationship between parents and children, and children do not necessarily behave in the same way with their parents as they do with others. Appellant was not T. J.'s parent–he was a friend who had lived with the family for less than three months. Casteel's statement did not indicate that T. J. was often underfoot of Appellant or any other caretaker. Nor did Casteel state that it was ever communicated to Appellant that T. J. was commonly underfoot and that he should take extra care because of this. Casteel's statement was only about herself and did not provide any evidence of T. J.'s behavior around any other individuals or of Appellant's knowledge that the child was commonly underfoot.

---

[2]*McKay*, slip op. at 7–8.

*        *        *

Essentially, there was no substantial and unjustifiable risk for Appellant to have perceived, and, therefore, he cannot be punished for not perceiving it.

### THE SUBSTANTIAL AND UNJUSTIFIABLE RISK

Section 6.03(d) of the Texas Penal Code defines culpable mental states, including criminal negligence, and it reads,

> A person acts with criminal negligence, or is criminally negligent, with respect to circumstances surrounding his conduct or the result of his conduct when he ought to be aware of a substantial and unjustifiable risk that the circumstances exist or the result will occur. The risk must be of such a nature and degree that the failure to perceive it constitutes a gross deviation from the standard of care that an ordinary person would exercise under all the circumstances as viewed from the actor's standpoint.

TEX. PENAL CODE § 6.03(d). Applying this definition to the case at hand, the first question is whether "Appellant's actions of cooking hot items and moving around the kitchen with them created a substantial and unjustifiable risk to T. J." that Appellant ought to have been aware of. *See McKay*, slip. op. at 7. If so, the next question is whether his failure to perceive that risk constituted a gross deviation from the standard of care an ordinary person would have exercised when viewing all of the circumstances from Appellant's stand point. *Id.*

Casteel testified that Appellant normally cooked meals for the family, and that she had personally observed him doing so. She also testified that she had seen T.J. running around the kitchen while Appellant was cooking for the family, and that, because of the small area and the fact that Appellant was bigger, he did not have much room to move

around in the kitchen.

Based on all of the evidence, I believe that the jury could have reasonably inferred that Appellant ought to have been aware that his cooking created a substantial and unjustifiable risk to T.J. because T.J. had been known to run around in the kitchen while he was cooking. I further conclude that the jury could have found that Appellant's failure to perceive that risk was a gross deviation from the standard of care an ordinary person would have exercised had they viewed all of the circumstances from Appellant's stand point. Because I believe the evidence supports Appellant's conviction, I respectfully dissent.

Hervey, J.

Filed: November 4, 2015

Publish